Luse *v.* Rarick.

ANN LUSE, appellant,

*v.*

ANDREW RARICK, surviving executor, respondent.

An order allowing executors $500, for services rendered the estate, was made by the orphans court in January, 1880. The surviving executor filed his account in June, 1880, and prayed allowance for the $500, and also for $50 paid by him to the *cestui que trust*, out of $250 of the principal which had been paid in. To this account the *cestui que trust* excepted, because the allowance of the $500 was excessive, and also excepted "to the money collected on the principal of said estate." Both exceptions were disallowed,. and on appeal—*Held,*

(1) That the appeal from the allowance of the June account did not bring up for review the allowance of the $500 under the January order.

(2) That whether the executor was chargeable with interest on the $200 of the principal remaining in his hands, could not be considered, because no exception on that ground was taken below.

Appeal from decree of orphans court of Somerset county.

*Mr. W. W. Anderson, Mr. Gilhooly* and *Mr. J. J. Bergen,* for appellant.

*Mr. J. D. Bartine,* for respondent.

THE ORDINARY.

George Luse, by his will, directed his executors to pay to his

Luse v. Rarick.

wife $300 for each year, and at that rate for any fraction of a
year, between the time of his death and the passing of their
final account, for the support of herself and family, and he
directed them to invest the net balance of his estate and pay her
the interest annually so long as she should remain his widow.
And he authorized them, in case they should think the interest
insufficient for her proper maintenance, to pay her from time to
time so much of the principal as they might deem proper. The
executors, Cornelius W. Schomp and Andrew Rarick, settled
their final account January 12th, 1861. By it, it appeared that
they were chargeable with a balance of $8,893.82. Commis-
sions ($593.82) were allowed them on that account. They ap-
pear to have duly invested the money (part of it, in a house and
lot for the widow), and to have paid over to her the interest and
some of the principal. In 1872, Schomp died, and Rarick con-
tinued, as he still does, to execute the trust alone. Previous to
January 23d, 1880 (but at what particular time does not appear),
application was made to the orphans court, by Rarick, as surviv-
ing executor, for an allowance of commissions, and on that date
an order was made, by which, after reciting that it appeared that
from 1861 to 1872 the executors had jointly administered the
estate; that in the latter year, Schomp died; that since that
event, Rarick had had sole charge of the estate; that neither of
them had received any commissions or allowances for those ser-
vices, and that it had been made to appear to the court what
amount of money had come to their hands and been paid her by
them, it was ordered that the executors be allowed $500 as and
for their commissions from the time of their appointment until
the 1st day of April, 1879, and that the amount be retained out
of the interest of the investments of the estate, and be divided
between Rarick and the personal representatives of Schomp pro-
portionately, according to the time of service of each executor. That
order has been brought up in the transcript, but it was not appealed
from. In June, 1880, Rarick filed his account of the dealings
of the executors with the estate up to that time, and in it he prayed
allowance for the $500 as commissions allowed by the order of
January 23d, 1880. He also reported that $250 had been paid

in on the principal in January, 1879, of which he had paid the widow $50, for which latter sum he prayed allowance. To that account the widow excepted as follows: "First, to item of $500, for commissions in said account, as excessive." "Second, to the item of $250 collected on the principal of said estate." The court having heard the exceptions decreed, August 24th, 1880, that the account be allowed as stated and reported, and that "the legal commissions, by the consent of both parties allowed the surviving executor, be taken from the principal fund of the estate." The widow appealed from so much of that decree as ordered the payment of the commissions, and also from so much as allowed the deduction of $250 from the principal fund of the estate without the allowance of interest therein.

The order of January 23d, 1880, was not appealed from, as before stated, and though it has come up in the transcript, it does not appear, except from its title and recital, and a recital in the decree appealed from, under what circumstances it was made. It appears, from a recital in the decree appealed from, that it was not only made on notice, but by consent of the parties; for that decree refers to the commissions as having been allowed to the surviving executor "by consent of both parties." The allowance made by the order of January appears not only to have been of a gross sum, but also for services which had already been paid for in the allowance of commissions in the account of 1861, for it gives the $500 for services from the "time of the appointment" of the executors to April 1st, 1879. They had, in fact, received no compensation for their services from the time of passing their account in 1861. The inventory was filed in March, 1859. Inasmuch as the order was not appealed from, however, it is not before me for review, unless brought here by mere force of the appeal from the decree of August. That decree allowed the account, with the commissions, as having been fixed by the previous order of January. The appellant, who had not appealed from, nor, as far as appears, before that time, dissented from, the order of January, excepted to the allowance as excessive. If that order was made "with the consent of all the parties," the exception was properly overruled, and in the

absence of all knowledge of the circumstances under which it was made, except the statement just quoted from the decree appealed from, it must stand. Nor is the allowance so excessive as of itself to demand condemnation. From 1861 to 1879, a period of eighteen years, the executors had, as trustees, invested the sum of about $9,000; about $2,000 of it in a dwelling-house for the widow (they appear to have bought the lot and built a house and barn on it), and paid over to the widow the interest regularly, and without any loss whatever. It appears, on the other hand, that the investments, except the house and lot, are all on bond and mortgage, and that they are but three in number. One of them, $2,750, has stood since 1863; another, $1,750, since 1864; and the other, $2,433, since 1868. So that the executors have had but little trouble in making the investments. But the matter is not before me for review. The appeal from the decree allowing the account does not operate as an appeal from the order of January.

The other ground of appeal is, that the court did not charge Rarick with interest on $200 of the sum of $250, received by him January 6th, 1879. The $250 appear, by the account, to have been paid in on the principal of the trust fund. Rarick paid $50 of it to the widow. It does not appear that he invested it before he filed his account, or that he had any opportunity to do so, or that he made use of it himself. There is no evidence whatever on the subject. There does not appear to be any ground for charging him with interest upon it. But further, the exception was not made on this ground. It is simply an exception "to the item of $250, collected on the principal of said estate." What the ground of objection is, cannot be gathered from the exception. It is fair to say that the objection, on the score of interest, which is made a ground of appeal, was not a ground of exception in the orphans court. It cannot, therefore, be entertained here. *Trimmer* v. *Adams, 3 C. E. Gr. 505.*

The decree appealed from will be affirmed, with costs.