This is an appeal from a decree of the orphans court of the county of Passaic, made on the 24th day of February, 1921, allowing the account of the Paterson Safe Deposit and Trust Company, trustee, and overruling the exceptions thereto; and also from the allowance in said decree to the said trustee of $400 for commissions, and a counsel fee of *Page 590 
$250 to Griggs Harding, proctors for the accountant; and further commissions of $81.86 on income received during the period of said account. Two sets of exceptions were filed, one by William B. Beam and John C. Beam, and the other by Edward Beam, John C. Beam and William B. Beam. Both sets are alike, and are as follows:
"1. The accountant does not state the actual or market value of the securities set forth in schedule C of the final account.
"2. The accountant does not set forth the correct value of the stock in the Brooklyn City Railway Company mentioned in schedule C of said final account.
"3. The accountant does not set forth the method by which the bond and mortgage of Max Gold, mentioned in schedule C of said final account, has been acquired by it as trustee as aforesaid.
"4. The accountant does not set forth the number of the bonds and stocks held by it as trustee and mentioned in schedule C of said final account.
"5. The accountant has not annexed to the said account a full statement or list of the securities, investments and assets, of which the balance of the estate in its hands consist, and a statement of all changes made in the securities since the settlement of the last intermediate account.
"6. The accountant has not set forth the correct value of the stock in the Central Park North and East Railroad Company mentioned in schedule C of said final account."
The first point made is addressed to the first exception, namely, that it does not conform to rule 19 of the orphans court, in that the petition annexed to the account does not state the actual or market value of the securities set forth in schedule C of the account. I find, on an examination of the petition annexed to the account, that it strictly conforms to rule 19. The rule which governs is No. 21, under the caption "statement of assets to be annexed to the account," and is as follows:
"21. In the settlement of the accounts of executors, administrators, guardians or trustees, the accountant shall annex to the account a full statement or list of the securities, *Page 591 
investments and assets, of which the balance of the estate in his hands consists, and a statement of all changes made in the securities since the filing of the inventory or since the last settlement."
The accountant has annexed to its account a full statement or list of the securities, investments and assets of which the balance of the estate in its hands consists, and is not bound to state the actual or market value. This leads to the conclusion that the orphans court, in overruling exceptions 1, 2 and 6, was right.
As to the third exception, there is nothing in the rule which requires the accountant to set forth the method by which the bond and mortgage of Max Gold had been acquired. As to the fourth exception, the accountant is not bound to set forth the number of bonds and stocks held by it. It does set forth, as against each item of bonds or stocks, the par value on one side and the book value on the other, thus fully apprising all persons in interest of the total amount of the several bonds and stocks. The orphans court was therefore right when it overruled exceptions 3 and 4.
The fifth exception contains two separate objections. The first is as follows: "The accountant has not annexed to the said account a full statement or list of the securities, investments and assets of which the balance of the estate of the said Sarah A. Cooke, deceased, in its hands consists." This, I find, as above stated, is not the fact, and, as to this objection, the decree of the orphans court should be affirmed.
The next objection stated in the fifth exception is as follows: "This accountant has not annexed to the said account * * * a statement of all changes made in the securities since the settlement of the last intermediate account." Comparing the account from the 15th of April, 1917, to the 15th of April, 1919, with this final account (which runs from the 15th of April, 1919, to the 5th of January, 1921), I find that certain changes were made in the securities since the filing of the last account, and no statement of these changes are set out in the account. The changes are as follows:
Securities appearing in the account last settled which do not appear in the final account: *Page 592 
 Bond and mortgage, Mary J. Berdan ............ $500.00
 Bond and mortgage, Joseph Sharpe ............. 2,000.00
 Bond and mortgage, Catherine Warren, appearing
 in the account last settled at $1,200,
 and in the final account at $800.

Securities purchased since the last settlement:
 Victory loan bonds ($200 par), book value .... $191.84
 Victory loan bonds ($200 par), book value .... 195.00
 Victory loan bonds ($550 par), book value .... 550.00
 Bond and mortgage, Max Gold, book and par
 value ...................................... 2,000.00

In a letter written by Mr. Connolly, secretary of the accountant to Mrs. Carrie S. Beam, on April 13th, 1920 (ExhibitB-2), among other things he said he enclosed a list of the securities held in her trust at that writing and the amount at which the securities were carried on its books, and also a list showing the changes in her trust for the past year. Turning to the list of securities of the date April 13th, 1920 (which was marked Exhibit B-3), there is shown the Max Gold bond and mortgage for $2,000, which does not appear in the last account down to April 15th, 1919; and also the Catherine Warren mortgage is listed at a book value of $1,000 in Exhibit B-3, whereas the account filed in 1919 shows it as listed at $1,200, and in the final account it is listed at $800. In the statement of changes in the trust from April, 1919, to April, 1920 (marked ExhibitB-4), it is shown that on November 11th, 1919, the trustee bought the Max Gold mortgage for $2,000, and that, on account of the principal of the Warren mortgage, $200 was paid between February 2d 1919, and April 3d 1920. Touching the Sharpe mortgage, this Exhibit B-4 of the changes in the trust shows that on November 11th, 1919, the Joseph Sharpe mortgage was sold for $2,000. Turning to the final account, it appears in the income account (schedule A) that the accountant charges itself as follows: "August 18th, 1919, interest on Sharpe mortgage to June 30th, 1919, $60." The accountant does not charge itself with interest on the Sharpe mortgage from June 30th, 1919, until November 11th, 1919, when the mortgage was sold according toExhibit B-4. *Page 593 
Referring to the Victory loan bonds, aggregating $950 par, there is nothing in the final account which shows when these were acquired, or the price paid for the same. By reference toExhibit B-4, it appears that the block of $550 par of these bonds was purchased on July 14th, 1919. The accountant should have stated when the bonds were acquired, and, perhaps, from what source the fund with which to purchase them was derived, and the price paid. Koch. N.J. Prob. L. 1206 § 2.
There also appears in Exhibit B-4: "June 18th, 1919, Zax mortgage paid in full, $500." There is nothing in the account to show when this mortgage was acquired. Turning to schedule A of the final income account, we find the following entry: "June 1st, 1919. Interest on Zax mortgage to date, $13.89." This security does not appear either in the account of 1919 or the final account; and how the interest could be $13.89 on a $500 mortgage, unless it was purchased prior to the account of 1919, is to me inconceivable. The interest on this mortgage, if at six per cent., amounted to $30 a year, or $2.50 a month, and for $13.89 of interest to accrue thereon the mortgage must have been in the hands of the accountant for upwards of four and a half months, and going back four and a half months from June 18th, it would seem as if this mortgage was acquired some time in January of 1919, some two or three months prior to the filing of the account of April 15th, 1919. At least, this and the Sharpe mortgage required some explanation, which, if the rule was followed, would have enabled the beneficiaries to intelligently except to the account.
As to the other investments, they were carried forward from the account of 1919, which was allowed by the orphans court.
It was the duty of the trustees, as above stated, to annex to the account a statement of these changes.
In rule 6 of the orphans court, revised May 16th, 1893, it is provided, among other things, "that in the settlement of the accounts of trustees * * * the accountant shall be *Page 594 
required to annex to the account a full statement or list of securities, investments and assets of which the balance of the estate * * * consists, or a statement of all changes made in the securities since the filing of the inventory or since the last settlement." In the rules of that court, revised February 11th, 1902, rule 6 was changed to rule 8 without further change therein. In the rule of the orphans court, promulgated December 1st, 1915, to take effect April 1st, 1916, rule 8, above referred to, was changed to rule 21, and amended so as to require a trustee, on the settlement of his account, to annex a full statement or list of the securities, investments and assets of which the balance in his hands consist, "and a statement of all changes made in the securities since the filing of the inventory or since the last settlement." In the former rules (6 and 8) it will be perceived that the accountant had the option either to annex a list of the securities, c., of which the balance of the estate in his hands consisted, or, in the alternative, a statement of all changes made in the securities since the filing of the inventory or since the last settlement. In rule 21 the rule is preemptory, that the trustee must annex the list of securities as well as a statement of the changes in the securities. The purpose of this amendment, as I see it, was to give the fullest information to the beneficiaries of the dealings of the trustee in carrying out its trust. The trustee can probably explain the apparent discrepancies in the Sharpe and Zax mortgages; and if the orphans court had directed the trustee to comply with the rule, and the beneficiaries, on such compliance, were dissatisfied, they might then address their exceptions to any irregularity that might then appear. But, in the absence of such compliance, the exception was proper and sufficient, and the decree of the orphans court in dismissing this exception was erroneous.
The result is that the decree of the orphans court on this one exception will be reversed, and, as to the others, affirmed.
On this appeal further testimony was taken in this court, and the greatest latitude was given to the exceptants to sustain their case, and there was offered evidence dealing with *Page 595 
subject-matter that was entirely outside of the exceptions. This testimony I have decided not to consider. Luse v. Rarick,Ex'r, 34 N.J. Eq. 212; Trimmer's Ex'r v. Adams, 18 N.J. Eq. 505;1 Koch. N.J. Prob. L. 674.
The decree will be that all exceptions, excepting the one which is sustained, be affirmed, and, as to the remaining exception, the decree will provide that the accountant file a statement of all changes made in the securities since the settlement of the last account. This statement may be filed in this court, to which the beneficiaries may except, and, if exceptions be filed, the hearing on the same may be had here. Hill's Case, 55 N.J. Eq. 764,768; Trimmer's Ex'r v. Adams, supra; 1 Koch. N.J. Prob. L.95.
In addition to filing exceptions, the appellant also appealed from the decree of the orphans court allowing commissions, counsel fees, c. This question cannot be decided until after the accountant has filed the statement above mentioned, and the court has passed upon any exceptions which may be filed thereto, which decision may have a bearing on the right of the accountant and counsel to such allowances. Frey's Case, 73 N.J. Eq. 346; 1Koch. N.J. Prob. L. 410; Idem. 691.