This is an appeal from a decree of the Hudson county orphans court made on December 7th, 1934, wherein it was ordered that the decree dated August 9th, 1933, allowing the executor's final account be set aside, the letters testamentary granted to appellant as executor be revoked and the appellant removed from his office as executor; that letters of administration with the will annexed upon the estate of Philipine Hazeltine, deceased, be granted to William R. Gannon; that appellant surrender the assets of the estate to him; that appellant restate and resettle his account as executor on the 4th day of January, next; that the removal of appellant as trustee is not required but since he is removed from his office as executor "for misconduct in the performance of his *Page 309 
duties as such," that he be required as trustee to give security in the sum of $300,000 to the ordinary of the State of New Jersey for the faithful performance of his duty as trustee, and that he bring within the city of Hoboken and the jurisdiction of the court all the assets of the estate, and deposit same in the Hudson County Trust Company, and not withdraw the same except upon special order of the court. The decree imposed the costs of the proceedings and a counsel fee of $1,500, upon appellant personally. (Italics mine.)
The appellant, a nephew of decedent, was named the executor and trustee in the will of Philipine H. Hazeltine, who died March 11th, 1932, a resident of the city of Hoboken. The will was admitted to probate on April 5th, 1932, at which time appellant was a resident of Tenafly, Bergen county, New Jersey, from which place he moved in the early part of 1933 to the town of Barnstable, Massachusetts, where he now resides.
On October 1st, 1932, the city of Hoboken assessed the personal property of the estate in the name of the appellant as executor at the valuation of $250,000. The assessment was made for the year 1933 under authority of section 301, chapter 236, page 853,P.L. 1918, as amended P.L. 1920 ch. 310 p. 561 (2 Cum. Supp.Comp. Stat. p. 3488), which provides for tax on property under the control of any person as trustee, guardian, executor or administrator where such person is not a resident of the taxing district, but where the decedent resided in such taxing district at the time of his death.
By stipulation the file of the Hudson county orphans court is made a part of the record before me, and from this it appears that beginning with August 23d 1933, the city of Hoboken filed several petitions which have been abandoned with the exception of the petition of April 4th, 1934, upon which the order appealed from is founded. That petition alleged that appellant did not include in his final account as executor the amount of the tax assessed against him as such for the year 1933; that the decree of August 9th, 1933, allowing the said account was procured by the accountant by fraudulently withholding from the court the information that *Page 310 
the taxes due the city of Hoboken had not been paid or their payment provided for, and by fraudulently leading the court to believe that said accountant had fully administered said estate, whereas he had not done so and did not intend to do so, and prays that the decree of August 9th, 1933, allowing the final account be set aside; that the appellant be restrained from making any distribution of the balance in his hands until the further order of the court; and that he be ordered to bring and keep the balance in his hands shown by said account within the jurisdiction of the court. An order to show cause was made on said petition returnable September 22d 1933.
The answer of appellant to the petition (to which affidavits were annexed) raised the constitutionality of the tax; set forth that the estate had been distributed; that the tax had not been paid upon advice of counsel; that failure to pray allowance for said tax was not predicated upon mistake or fraud, but was purposely omitted on advice of counsel; that the claim of petitioner was not a debt of the estate or of appellant and that the proceeding instituted by petitioner was not a proper proceeding for the collection of the tax and the court was without jurisdiction to aid in the collection thereof.
The court found that "in withholding from this court information relating to this tax, and not making any mention thereof on the final accounting, the executor was guilty of fraudulent conduct. Under these circumstances, the final account was fraudulent and the decree of this court made on August 9th, 1933, allowing this account of the executor should be set aside."
The orphans court is a tribunal created by statute and the power to enter the order appealed from depends upon the statute creating it. Tenbrook v. M'Colm, 10 N.J. Law 333; In reAlexander, 79 N.J. Eq. 226.
Section 127 of the Orphans Court act (3 Comp. Stat. p. 3857), provides that the decree of the orphans court on the final settlement and allowance of executors' accounts "shall exonerate and forever discharge every such executor * * * *Page 311 
from all demands * * * beyond the amount of such settlement," except (1) where the executor obtains additional assets of the decedent after such settlement; and (2) excepting also where the party applying for a resettlement shall prove some fraud or mistake therein to the satisfaction of the orphans court.
The object of an account by an executor is not to compel him to carry out his duties to pay creditors of decedent. The object of such accounting is to ascertain how much assets the executor has in his hands. "If the executor or administrator disputes the claim, or refuses to pay it, the orphans court cannot allow it, or compel the executor or administrator to include it in his account. To justify the orphans court in allowing a claim against an estate, it must appear that the executor or administrator assented to, or recognized it as a debt due from the estate. * * *" Vreeland v. Vreeland's Adm'r, 16 N.J. Eq. 512.
When the judge of the orphans court in his opinion (In reHazeltine, 13 N.J. Mis. R. 152, 159; 177 Atl. Rep. 108), said that if the appellant had frankly set forth the assessment of the city of Hoboken, the court would not have allowed the settlement of the final account on August 9th, 1933, the well established principles that the orphans court is not the proper tribunal for the trial of disputed claims (Middleton v. Middleton, 35 N.J. Eq. 115,116) and cannot decree payment to creditors (Miller
v. Pettit, 16 N.J. Law 421, 426), but also that the debts before an orphans court in settling a final account are only those for which the executor claims an allowance in his account (Partridge v. Partridge, 46 N.J. Eq. 434, 436; affirmed,47 N.J. Eq. 601), was overlooked. In the latter case, Vice-Chancellor Van Fleet, in reply to the argument that the statute giving the orphans court power to decree distribution under wills so extended the jurisdiction of that court that it could deal with the rights of creditors, said (at p. 436):
"* * * the debts and expenses meant by the statute are obviously those, and only those, which the executor has paid, and for which he claims allowance in his account. The regulation *Page 312 
prescribed by the statute is a mere accounting regulation, affecting nobody but the accountant and the beneficiaries under the will. No power is given to the orphans court over creditors. If a debt is exhibited to an executor which is disputed, the dispute must be settled in one of the tribunals created for the determination of such questions. * * * The decree in question is * * * so far as it attempts to deal with the rights of complainants as creditors, previously coram non judice. * * *"
The court of errors and appeals held that an application to have an account opened is addressed to the sound discretion of the court; that fraud or mistake must be proved to the satisfaction of the court; that the burden of showing fraud or mistake is upon the applicant; that if an account is opened without legal proof, the proceedings will be set aside. Engle
v. Crombie, 21 N.J. Law 614; Johnson v. Eicke,12 N.J. Law 316; Hyer v. Morehouse, 20 N.J. Law 125. The phrase "to the satisfaction of the said orphans court" does not enable the court to dispense with proof, but was used "to indicate to them, that that proof should be clear and satisfactory, and that they ought not in a doubtful case to open an account." Johnson v. Eicke,supra. And it is well established that when an account, once settled, is opened upon proof of fraud and mistake it is not opened generally, but only in respect to the particular items connected with the fraud or mistake. In re Morris, 65 N.J. Eq. 699; Trimmer's Executor v. Adams, 18 N.J. Eq. 505. Here, the court opened the entire account.
Appellant's answer and affidavits which stand uncontradicted, show that the executor omitted to pay the tax or disclose that fact upon the advice of his counsel, who advised the tax was unconstitutional for reasons which are set forth in the answer, the soundness or otherwise of which reasons it is not necessary to pass upon in arriving at a decision in this matter.
Is it fraud or bad faith on the part of an executor to refuse to pay a tax which he conceives and is advised by counsel to be an unlawful imposition? It was within appellant's power as well as right to refuse to pay the tax. Indeed it was a duty *Page 313 
imposed upon him to resist the same in the discharge of his office under such circumstances. In Dey v. Codman, 39 N.J. Eq. 258,
the court refused to surcharge an executor with the payment of municipal taxes where the assessment was declared unconstitutional after the tax had been paid, the court holding that the payment was not only made in good faith, but upon the advice of counsel.
In its opinion the orphans court further found that by not paying the tax, the appellant, "failed to administer the estate in accordance with law" * * * that "he is wasting the estate of the decedent by subjecting it to statutory penalties for the non-payment of taxes," * * * "that the concealment of this assessment was an act of bad faith on the part of the executor and a fraud upon the court, and this violation of the trust and confidence reposed in the executor, unquestionably requires his removal." (Italics mine.)
The pertinent sections of the Orphans Court act which provide for the removal of executors are sections 149 and 150. The former sets forth the grounds for removal: (a) refusal to obey an order of the court to file an inventory or account or give security or additional security, or where the executor shall refuse to do or perform any act or thing which the court by the act is authorized to order or direct; (b) embezzle, waste or misapply any part of the estate; (c) or abuse the trust and confidence reposed in him. The latter section provides that if (a) the executor becomes non-resident and refuses to proceed with the administration of the estate; and (b) if he becomes mentally unsound he may be removed, and the letters testamentary revoked.
The failure on the part of the executor to pay the tax or disclose its non-payment to the court, for the reasons which he gives, show neither a wasting of the estate nor bad faith, for except in the case of insolvent estates, it is for the executor or administrator alone to say what claims he will allow. FirstNational Bank of Freehold v. Thompson, 61 N.J. Eq. 188 (at p.202). Moreover, a tax is an impost levied by authority of government, upon its citizens for the support of the state. It is a claim created by government by public act *Page 314 
and for public purposes and collectable only in the manner provided by the act itself. It is not a debt. City of Camden v.Allen, 26 N.J. Law 398. The respondent possessed a legal method to enforce payment of the tax, and that was exclusive. Sea IsleCity Improvement Co. v. Sea Isle City, 61 N.J. Law 476. That method is prescribed in article 6 of the act of 1918, page 872. In this state taxes become liens on property solely from express legislation, and can be collected only in the manner provided by statute. Linn v. O'Neill, 55 N.J. Law 58. Taxes are, in legal contemplation, neither debts nor contractual obligations, but are, in the strictest sense of the word, exactions. Board ofChosen Freeholders of Atlantic County v. Township of Weymouth,68 N.J. Law 652.
Assuming that the city of Hoboken was a creditor, the orphans court, except in the case of insolvent estates, has not now, and never has had, authority to try disputed claims, nor to determine who are, and who are not creditors of a decedent's estate. So absolute is its incapacity to pronounce judgment on the rights of creditors when the estate as here is solvent, that it has been held that it cannot, even at the instance of an heir-at-law, entertain litigation respecting the validity of the claims on which an application for an order to sell land for the payment of debts is based. Partridge v. Partridge, supra; In re Fulper,99 N.J. Eq. 293; Mullaney v. Mullaney, 65 N.J. Eq. 384.
It seems to me that the petition of respondent is one which, if not expressly, certainly impliedly seeks to enforce the payment of a tax with the aid of the orphans court. Neither the orphans court, nor any court in this state can aid in the collection of taxes.
Courts are reluctant to remove an executor or trustee without clear and definite proof of fraud, gross carelessness or indifference. In Heisler v. Sharp, 44 N.J. Eq. 167; affirmed,45 N.J. Eq. 367, we held "all that the respondents [executors] were required to do, was simply to do what any man of ordinary prudence and caution would, under like circumstances, have done. So long as an executor acts in good faith, *Page 315 
and with ordinary discretion, and within the scope of his powers, his acts cannot be successfully assailed. No man is infallible; the wisest make mistakes; but the law holds no man responsible for the consequences of his mistakes which are the result of the imperfection of human judgment, and do not proceed from fraud, gross carelessness or indifference to duty. * * * Indeed, he may do anything within the scope of his powers, without the least risk of personal liability for the consequences of his acts, provided he exercises the care and judgment of a man of ordinary prudence and sagacity. That is the test which the courts are required to apply in all cases." This language has more than once been quoted as correctly stating the law on this point. Smith
v. Jones, 89 N.J. Eq. 502; In re Leonard, 107 N.J. Eq. 235; Inre Corn Exchange National Bank, 109 N.J. Eq. 169. "To find him [administrator] lacking in duty because he accepted the advice of the counsel whom he had employed, would require him to be charged, not with his own negligence, but with the negligence of others." In re Sharp, 61 N.J. Eq. 601, 606. Loss sustained by an executor by employment of attorneys in another state to recover a claim, for which service the attorneys charged an exorbitant fee, should not be charged against the executor where he acted honestly, and made every effort to recover the exorbitant charge. In re Slater, 88 N.J. Eq. 296. "Our courts have said that where a person occupying the position of trustee acts in good faith and with the sense and discretion that he would use in his private affairs in relying upon the advice or assistance of a supposedly competent attorney, he is excused from losses suffered through the error or criminal conduct of the attorney." In re Leonard, supra, and see Four Corners Buildingand Loan Association v. Schwarzwaelder, 88 N.J. Eq. 545. In the instant case appellant acted upon the advice of eminent counsel of unquestioned integrity and ability.
The orphans court required the appellant to give security in the sum of $300,000. The authority for this is found in section 140 of the Orphans Court act (3 Comp. Stat. p. 3866). where it is provided that upon satisfactory proof that *Page 316 
the property in the hands of the "trustee under a will is unsafe, insecure, or in danger of being wasted," at the instance of any person interested in the estate of the testator, or in such trust estate, the orphans court may require such executor or trustee to give security to the ordinary of this state by bond with sureties conditioned for the faithful performance of his duty. This declaration of legislative policy also clearly indicates that it is not for every unwarranted act of omission or commission that an executor is to be removed, but only that if he has strayed from the path of fiduciary duty. Pfefferle v. Herr, 75 N.J. Eq. 219.
In requiring appellant as trustee to give security, the court in its opinion points to the fact that he sold his home in Tenafly to his father in October, 1933, and moved to Massachusetts. Now this, it will be noted, was five months after his account was allowed. And aside from the mere reference to a sale of the property, the record discloses no evidence of a fraudulent purpose in making the conveyance. But, the court "regarded" the sale as further proof of appellant's "bad faith." The mere possiblity of fraud is insufficient to warrant adjudication of fraud. The Jersey Land Co. v. Gunzenhauser, etal., 117 N.J. Eq. 463, 466.
With respect to the appellant's removal from the state, an accepted authority on the law of taxation says:
"A man may lawfully change his residence from one municipality to another at pleasure; and though the purpose in changing be to avoid taxation in the town he removes from, yet the fact cannot be taken notice of for the purpose of continuing his taxation in that town * * *. In each of these cases, the party is only exercising a right, which the law allows to him; he may choosehis own place of residence at pleasure, and he may select, as seems most for his interest, between taxable and non-taxable property; and it is no concern of others, or even of the state which by its laws allows the choice, what may be the motive on which he acts." Cooley Tax. (4th ed.) § 1072, citing cases.
"There is no fraud in doing a lawful act. A man may change his residence to avoid taxation * * * he cannot be *Page 317 
guilty of fraud by doing what he has a legal right to do. A court does not inquire into one's motive for doing a lawful act * * *."State v. Buder, 308 Mo. 237, 252.
Beyond the admitted fact of removal from the state there is no proof of appellant's intent or purpose in so doing.
The record before me discloses no evidence of fraud nor that the trust estate is unsafe, insecure or in danger of waste. Under the proofs, the decree compelling appellant to give security as trustee and visiting upon him the stigma of removal as executor finds no support in law.
The decree of the orphans court is reversed. *Page 318